

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| EVERETTE JOHNSON, | ) | |
| Petitioner, | ) | 07 C 5102 |
| v. | ) | |
| GUY PIERCE, | ) | Hon. Charles R. Norgle |
| Respondent. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Petitioner Everette Johnson's Petition for Writ of Habeas Corpus – Person in State Custody, filed pursuant to 28 U.S.C. § 2254. For the following reasons, the Petition is denied.

## I. BACKGROUND

### A. Facts

Petitioner Everette Johnson ("Johnson") is incarcerated at the Pontiac Correctional Center in Pontiac, Illinois, where he is in the custody of Respondent Guy Pierce, the Warden of that facility. On August 20, 2004, the Illinois Appellate Court affirmed Johnson's convictions and combined 100-year sentences for the crimes of first degree murder and concealment of a homicidal death. As part of its decision to affirm, the Appellate Court summarized the facts as developed at Johnson's bench trial in the Circuit Court of Cook County, Illinois. The following facts must therefore be presumed to be correct for the purposes of this Court's habeas review. See 28 U.S.C. § 2254(e)(1).

In December 1997, defendant [Johnson] and his girlfriend, Joan Tribblet (Joan), lived together with their three children and Joan's first child who had another father. The victim, Oncwanique, was Joan's third child and had been born in August 1996. She was approximately 16 months old at the time of her murder.

On December 19, 1997, defendant, Joan, and the three children were asleep in the apartment. Oncwanique shared a bed with Joan and defendant. Oncwanique woke up whining and pulling on the covers. Joan's response was not a gentle caress, a lullaby, or a bedtime story. Instead, she ordered Oncwanique to stand at the foot of the bed until she was sleepy. When Oncwanique touched the bed, Joan responded with her usual form of "discipline," she placed her hand around Oncwanique's throat and choked the child to the point of unconsciousness. Earlier in the evening, Oncwanique passed out after being similarly "disciplined," but Joan revived her with cold water. When strangulation failed to soothe the toddler, Joan further "disciplined" Oncwanique by forcing her face into the bed and beating her with a wooden ruler. Eventually defendant awoke and took over the "discipline," beating Oncwanique with the ruler until she lost consciousness, fell limp in his arms, and stopped breathing. Defendant and Joan attempted to revive Oncwanique with cold water. When this attempt was unsuccessful they returned the toddler to the bed and left her there to die. We are left without expert testimony to tell us whether Oncwanique's death was the result of the strangulation, the smothering, or the beating, because the next morning this tragic, but tragically familiar, tale of child abuse took an unusually gruesome turn.

The morning after they killed Oncwanique, Joan and defendant decided that they needed to dispose of her body. Joan argued that they should cut up the toddler's body and disguise the pieces by coating them in flour and frying them. Defendant favored dissolving the body in battery acid, a tactic he had seen used in a movie. The pair initially opted for frying. Defendant laid newspapers on the floor in the bathroom, brought in the child's body, and began cutting it into pieces with a work knife. Initially, Joan coated the pieces including the child's hands and forearms in flour and fried them in oil. However, the frying process created acrid smoke that prompted complaints from the neighbors and a visit from the fire department. Defendant and Joan then abandoned their frying plan and adopted defendant's acid strategy. Defendant obtained a large cooking pot from a discount store and a container of battery acid from an auto parts store. He placed the child's body into the pot and covered it with acid. The child's body was stiff, and defendant was forced to cut her spine from her body to make it fit into the pot. Defendant stored the pot of acid under the kitchen sink. He cut up the fried body parts into smaller pieces and scattered them in alleys hoping they would be consumed by vermin or dogs. He took the child's spine and threw it into a swampy area behind his place of employment. The remainder of Oncwanique's body remained in the pot of acid for several weeks. Defendant occasionally stirred the gruesome mixture with a long screwdriver, and on one occasion used a blender borrowed from a neighbor to liquify the child's body. Defendant poured part of the mixture down the toilet and disposed of the balance by

pouring it into storm sewers during a rainstorm. Defendant's efforts to dispose of Oncwanique's body were ultimately successful, and despite significant effort the police were unable to locate the child's spine or any other evidence of her body. The police did, however, recover the pot, the screwdriver, the blender, and a pair of defendant's blue jeans with holes apparently caused when battery acid splashed on defendant.

People v. Johnson, No. 03-478, slip op. at 2-3 (Ill. App. Ct. Aug. 20, 2004).

## B. Procedural History

### *1. State Court Proceedings*

Prior to trial, Johnson filed a motion to quash his arrest and suppress his statement, which the Circuit Court denied after hearing testimony from Chicago police officers involved in the investigation into Oncwanique's disappearance. Id. at 4-8. At trial the State presented, inter alia, the following evidence: Tribblet's testimony regarding Oncwanique's death and disposal,[1] Johnson's inculpatory statement to the police following his arrest, and the testimony of neighbors who reported a foul odor originating in Johnson's apartment during the time Oncwanique's body was decomposing in the acid. Id. at 4. The Court convicted Johnson of first degree murder and concealment of a homicidal death, and sentenced him to a total of 100 years imprisonment. Id. at 1. In sentencing Johnson, the Court found that Johnson was ineligible for the death penalty, but noting the young age of the victim, found Johnson eligible for an extended term of imprisonment under 730 ILL. COMP. STAT. 5/5-5-3.2(b)(4)(I) (West 2002). Id.; see also People v. Johnson, No. 06-189, slip op. at 5 (Ill. App. Ct. Feb. 9, 2007) (affirming the Circuit Court's denial of Johnson's state court postconviction petition).

---

[1] Tribblet pled guilty to murder and testified in exchange for a 60-year sentence. Id. at 4.

3

On direct appeal, Johnson asserted that (1) the Circuit Court should have granted his motion to quash his arrest and suppress his postarrest statement because the police arrested him without probable cause; (2) the Circuit Court should have allowed him to depose Tribblet; and (3) he should receive credit for time served. Johnson, 03-478, at 1. The Appellate Court affirmed, finding that there was probable cause to arrest and that the Circuit Court's decision not to allow a deposition of Tribblett was not an abuse of discretion. Id at 8-12. The Appellate Court ordered that Johnson be given credit for time served. Id. at 12.

Johnson filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, asserting that (1) his motion to quash arrest and suppress statement should have been granted because the police lacked probable cause to arrest him; and (2) the Circuit Court erred in denying his motion to depose Tribblett. Resp.'s Ex. E, at 13. The Illinois Supreme Court denied Johnson's PLA on November 24, 2004. People v. Johnson, 824 N.E.2d 288 (Ill. 2004). Johnson did not file a Petition for Writ of Certiorari to the United States Supreme Court.

On June 15, 2005, Johnson filed a state postconviction petition in the Circuit Court, asserting that (1) the Circuit Court sentenced him beyond the statutory limit; (2) his indictment was defective; (3) newly discovered evidence showed his innocence; (4) his trial attorney was constitutionally ineffective for failing to object to a sentence beyond the statutory limit and failing to call witnesses in his defense; and (5) his appellate counsel was constitutionally ineffective for failing to raise the above claims. Resp.'s Ex. M, at C-40-44; People v. Johnson, No. 98-17950-02, slip op. at 1 (Ill. Cir. Ct. June 29, 2005). The Circuit Court determined that because Johnson had not raised issues (1), (2), and (4) at trial or on direct appeal, those issues were waived. Johnson, 98-17950-02, at 3-4. The Court did not directly address issues (3) or (5),

4

but ultimately found that all of Johnson's claims were "frivolous and patently without merit," and denied the petition. Id. at 7.

On appeal, Johnson asserted that he had stated a meritorious claim of ineffective assistance of appellate counsel based on counsel's failure to raise the issue of the extended sentence. Resp.'s Ex. G, at 2. In support of that assertion, Johnson argued that the Circuit Court's ruling at his death sentence eligibility hearing was inconsistent with the imposition of an extended sentence, and that his sentence was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000). Id. at 11, 14-20. The Appellate Court affirmed, finding that since Johnson was properly sentenced under Illinois statutory law, his claim of ineffective assistance of counsel was meritless. Johnson, 06-189, at 5. The Court also found that Johnson had waived his supporting arguments because he had not raised them in his initial petition. Id.

Johnson filed a PLA with the Illinois Supreme Court, asserting that (1) the Appellate Court erred in finding that he had not stated a claim for ineffective assistance of counsel; (2) he was not eligible for an extended sentence; and (3) that his sentence violated Apprendi. Resp.'s Ex. K, at 11-14. The Illinois Supreme Court denied Johnson's PLA on May 31, 2007. People v. Johnson, 871 N.E.2d 58 (Ill. 2007).

### 2. *Proceedings before the District Court*

Johnson filed his Petition for Writ of Habeas Corpus – Person in State Custody pursuant to 28 U.S.C. § 2254 on September 12, 2007. Johnson asserts the following grounds for relief: (1) the Circuit Court erred in denying his motion to quash arrest because there was no probable cause to arrest him; (2) he was denied his right to present a defense when the Circuit Court denied his request to depose Tribblet; (3) his trial attorney was constitutionally ineffective for refusing to

allow him to testify despite his repeated requests to do so; (4) his appellate counsel was constitutionally ineffective for failing to argue that (a) a detective gave perjured testimony at trial, and (b) his sentence was excessive; and (5) the State failed to disclose its plea agreement with Tribblet.

Respondent filed his Answer to Johnson's Petition on November 9, 2007, along with the state court record. After reviewing Respondent's submissions, the Court appointed counsel for Johnson on November 13, 2007. For reasons not made clear in the record, counsel did not file an appearance for Johnson until September 11, 2008. On May 28, 2009, counsel filed a motion to withdraw, which the Court granted. Johnson, proceeding pro se, filed a motion to hold his Petition in abeyance on September 29, 2009, which the Court denied. The Court granted Johnson an extension of time to file his Reply brief, which Johnson filed on May 18, 2010. Johnson's Petition is now fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Johnson's Petition is governed by 28 U.S.C. § 2254(d), which sets a high hurdle for habeas relief. This statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

6

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either incorrectly laid out governing United States Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case." Sutherland v. Gaetz, 581 F.3d 614, 616 (7th Cir. 2009) (citing Calloway v. Montgomery, 512 F.3d 940, 943 (7th Cir. 2008)). A state court's decision is an "unreasonable application" of clearly established Supreme Court law

> when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply.

Id. (citing Muth v. Frank, 412 F.3d 808, 814 (7th Cir. 2005)). In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.").

Before reviewing the Illinois courts' decisions, however, this Court must determine whether Johnson fairly presented his federal claims to the state courts. Section 2254(b) provides that "[a]n application for a writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). In order to satisfy this exhaustion requirement, habeas petitioners must "fairly presen[t] federal claims to state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Johnson v. Pollard, 559 F.3d 746, 751 (7th Cir. 2009)

7

(quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). A federal habeas petitioner must therefore "present his federal claims at each level of the state's established review process." Id. (citing Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("A state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one complete round of the State's established appellate review process.")). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

A federal court may excuse a § 2254 petitioner's procedural default only where the "petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010). A "cause" is defined as "an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." Id. "Prejudice" means "an error which so infected the entire trial that the resulting conviction violates due process." Id. The "fundamental miscarriage of justice" exception requires a showing of actual innocence. Id. at 388-89 (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Finally, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. Smith, 598 F.3d at 382; see also Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court

decision rests on state law that "is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).

With the above principles in mind, the Court examines Johnson's Petition.

## B. Johnson's Claims for Relief under § 2254

### 1. *No Probable Cause to Arrest*

Johnson's first assertion in support of his Petition is that he was arrested without probable cause. As the Court has already noted, Johnson presented this claim to the Circuit Court, the Illinois Appellate Court, and the Illinois Supreme Court. The Illinois Appellate Court analyzed Johnson's assertion on its merits and determined that "there was ample evidence to establish probable cause that a crime had been committed." Johnson, 03-478, at 9. This evidence included: Johnson and Tribblet's "conflicting and false accounts of the child's whereabouts;" a police conversation with a separate family member who reported that Onewanique had suffered an injury that may have been the result of child abuse; independent verification of Onwcanique's injury; and Johnson's failure to return to his apartment or report for work after being contacted by the police. Id.

Since the state courts allowed Johnson a "full and fair" opportunity to litigate his Fourth Amendment claim, Johnson may not pursue this claim in his federal habeas petition. Stone v. Powell, 428 U.S. 465, 494 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); Cabrera v. Hinsley, 324 F.3d 527, 530-31 (7th Cir. 2003) (Fourth Amendment claims are "outside the scope of the [federal habeas corpus] statute."); Hampton v.

9

Wyant, 296 F.3d 560, 562 (7th Cir. 2002) ("although both state and federal courts must apply the exclusionary rule at trial and on direct appeal, it is inappropriate to use the exclusionary rule as a basis of collateral relief because it would not appreciably augment the deterrence of improper police conduct."). Johnson's first claim for relief under § 2254 therefore fails.

## 2. *Denial of Deposition*

Johnson next contends that the trial court denied him his Sixth Amendment right to present a defense when it denied his request to depose Tribblet. Johnson raised this issue on direct appeal, and the Illinois Appellate Court affirmed the decision of the trial court. Johnson, 03-478, at 11-12. The Appellate Court explained that although Illinois Supreme Court Rule 416(e) allowed for the use of discovery depositions in capital cases,[2] the Illinois Supreme Court had not yet provided guidance on the issue of what specific circumstances would justify the taking of such a deposition. Id. at 11. The Appellate Court thus reviewed this issue under an abuse of discretion standard, as suggested by the Committee Comments for Rule 416(e). Id. It concluded that although it might have been inclined to allow Johnson to depose Tribblet, given Tribblet's extensive statement to the police and her stated intention to invoke the Fifth Amendment if deposed, the trial court's decision not to allow the deposition was not contrary to the purposes of Rule 416(e) and not an abuse of discretion. Id. at 12.

This Court finds that the Illinois Appellate Court disposed of this issue on "independent" and "adequate" state law grounds. See Coleman, 501 U.S. at 729. The Appellate Court's decision rested solely on independent Illinois law that, this Court notes, does not contradict United States Supreme Court precedent. This precedent indicates that while depositions in

---

[2] The State initially indicated its intent to seek the death penalty. Id. at 11.

10

criminal cases may be allowed in rare cases, see United States v. Cannon, 539 F.3d 601, 603-04 (7th Cir. 2008) (citing Crawford v. Washington, 541 U.S. 36 (2004)), there is no constitutional right to such a deposition. Minder v. Georgia, 183 U.S. 559, 562 (1902). The issue of whether Johnson should have been allowed to depose Tribblet is therefore a matter of Illinois law, and is beyond the scope of this Court's federal habeas review. See Smith, 598 F.3d at 382.

### 3. *Ineffective Assistance of Counsel at Trial*

Johnson's third assertion is that he was denied his constitutional right to effective assistance of counsel when his attorney at trial refused to allow him to testify despite his repeated requests to do so. In order to establish that his counsel was ineffective, Johnson must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Gentry v. Sevier, 597 F.3d 838, 851 (7th Cir. 2010) (quoting Strickland, 466 U.S. at 694). An ineffective assistance of counsel claim may be brought in a § 2254 motion, regardless of whether the claim was raised on appeal. See Massaro v. United States, 538 U.S. 500, 504 (2003).

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong

11

presumption that Johnson's attorney performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Johnson must show "errors so serious that counsel was not functioning as 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

In this case, Johnson asserts that his attorney was ineffective for refusing to call him as a witness on his own behalf, despite his requests to testify. The right to testify on one's own behalf in a criminal trial is of course a fundamental constitutional right. Rock v. Arkansas, 483 U.S. 44, 51 (1987) (explaining that the right to testify has its roots in the Fifth, Sixth, and Fourteenth Amendments). However, the decision regarding whether a defendant should take the stand in any given case "is an important tactical decision as well as a matter of constitutional right." Brooks v. Tennessee, 406 U.S. 605, 612 (1972). The task before the Court is therefore to determine whether Johnson has shown that counsel unprofessionally deprived Johnson of an important constitutional right, or whether the Court should presume that counsel merely made a routine strategic decision at trial. See Holman, 314 F.3d at 840 (explaining that courts should take a deferential stance towards defense attorneys when reviewing ineffective assistance of counsel claims).

Johnson does not assert that he made any formal objection to counsel's decision, or made a request to the trial Court that he testify. See Thomas v. Boyd, No. 00-1840, 2002 U.S. Dist. LEXIS 5425, at *32 (N.D. Ill. March 29, 2002) (rejecting a habeas petitioner's assertion that his attorney was constitutionally ineffective for advising petitioner not to testify). In fact, the trial

12

transcript belies Johnson's assertion that his attorney prevented Johnson from testifying despite Johnson's desire to do so.

> THE COURT: Mr. Johnson, your attorney has advised the Court that you do not wish to take the witness stand and testify in your own behalf; is that correct?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that whether or not you take the witness stand in this trial and testify in your own behalf is your decision and yours alone to make?
> THE DEFENDANT: Yes.
> THE COURT: Have you discussed your decision not to testify in this case with your attorney?
> THE DEFENDANT: Yes.
> THE COURT: Has anyone promised you anything or threatened you in any way to cause you not to want to take the witness stand and testify?
> THE DEFENDANT: No, sir.
> THE COURT: Are you choosing not to testify in this case of your own free will?
> THE DEFENDANT: Yes.
> THE COURT: And it is your decision not [to] testify; is that correct?
> THE DEFENDANT: Yes.
> THE COURT: Very well. I find that the defendant's decision not to testify in this case is made after thoughtful discussion with his attorney and is knowingly and voluntarily made of his own free will and such decision is not the product of any promises, threats or coercion of any kind.

Resp.'s Ex. M, at DD 4-6.

Johnson has therefore presented the Court with nothing more than an inadequately developed assertion that counsel somehow prevented him from testifying against his wishes. In Underwood v. Clark, a habeas petitioner made a similarly undeveloped claim that his attorney refused to allow him to testify. 939 F.2d 473, 476 (7th Cir. 1991). The Seventh Circuit rejected the petitioner's claim, reasoning:

> this barebones assertion by a [petitioner], albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It is just too facile a tactic to be allowed to succeed. Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant further investment of

13

> judicial resources in determining the truth of the claim . . . [T]he [petitioner] must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.

Id. Taking the trial transcript and the above precedent into account, the Court determines that there is insufficient evidence in the record to conclude that counsel's decision not to offer Johnson's testimony was anything other than a routine strategic decision. See Brooks, 406 U.S. at 612.

The Seventh Circuit recognizes that "trial strategies are generally left to the discretion of counsel and second-guessing strategic decisions in hindsight will generally not be a meritorious basis to find ineffective assistance of counsel." Gentry, 597 F.3d at 851 (citing Smith v. Gaetz, 565 F.3d 346, 352-53 (7th Cir. 2009)). Given this clear precedent, the Court is reluctant to engage in second guessing, or "Monday morning quarterbacking," regarding counsel's strategic decisions in this case. See Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990). Moreover, the Court can find no indication in the record that Johnson's attorney "was not functioning as the 'counsel' guaranteed by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687). The Court therefore determines that Johnson's claim of ineffective assistance at trial fails.

### 4. *Ineffective Assistance of Counsel on Appeal*

"The Sixth Amendment right of effective assistance of counsel applies to a criminal defendant's trial, sentencing, and the first appeal of right." Jones v. Welborn, 877 F. Supp. 1214, 1219 (S.D. Ill. 1994) (citing Pennsylvania v. Finley, 481 U.S. 551 (1987)). The familiar Strickland standard therefore applies to defense counsel's performance both at trial and on direct

14

appeal. See Lee v. Davis, 328 F.3d 896, 900 (7th Cir. 2003); Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001).[3] Appellate counsel's performance is objectively unreasonable "if counsel fails to appeal an issue that is both obvious and clearly stronger than the one that was raised." Winters, 274 F.3d at 1167. Prejudice is established where failing to raise such an issue "'may have resulted in a reversal of the conviction, or an order for a new trial.'" Id. (quoting Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)); see also Lee, 328 F.3d at 900.

On direct appeal, Johnson's attorney asserted that (1) the trial court erred when it denied Johnson's motion to quash his arrest and suppress his statement; (2) the trial court erred when it denied Johnson's motion to depose Tribblet; and (3) his sentence should reflect time served. Johnson, 03-478, at 1. Johnson now asserts that counsel should have asserted that (1) a Detective Wolfer gave perjured testimony at trial; and (2) his sentence was excessive.

Johnson, however, provides no details as to precisely what portion of Detective Wolfer's testimony was false, or how this allegedly false testimony impacted the trial. Again, the Court is left with Johnson's bare assertion and nothing more. In addition, Johnson's claim that his sentence was excessive is meritless. In its Opinion affirming the Circuit Court's denial of his state court postconviction petition, the Illinois Appellate Court explained that Johnson properly received an extended sentence under Illinois statutory law because the victim was under the age of twelve. Johnson, 06-189, slip op. at 4-5 (citing 730 ILL. COMP. STAT. 5/5-5-3.2(b)(4)(I) (West

---

[3] The Strickland standard does not, however, apply to an attorney's performance on a collateral attack of a prisoner's conviction. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); Barkauskas v. Lane, 946 F.2d 1292, 1294 (7th Cir. 1991) (habeas petitioners have no constitutional right to counsel, effective or otherwise).

15

2002)). The Court therefore determines that the issues Johnson's attorney failed to raise are not "both obvious and clearly stronger than the one[s] that [were] raised." See Winters, 274 F.3d at 1167. Counsel's performance on appeal was therefore not objectively unreasonable, and counsel was thus not constitutionally ineffective. See id.

### 5. *Failure to Disclose Plea Agreement with Tribblet*

Johnson's final assertion is that the State failed to disclose its plea bargain with Tribblet. Johnson contends that he could have used the Plea Agreement to impeach unidentified States' witnesses. Respondent correctly asserts that Johnson failed to submit this claim to the state courts for one full round of review. See Pollard, 559 F.3d at 751 (holding that a federal habeas petitioner procedurally defaults any claim not exhausted at the state court level.). The Court cannot excuse Johnson's procedural default of this issue, as he has not shown cause for the default and actual prejudice therefrom, or that he is actually innocent of the crimes for which he was convicted. See Smith, 598 F.3d at 382. Johnson's final claim in support of his Petition is therefore procedurally defaulted.

### III. CONCLUSION

For the foregoing reasons, Johnson's Petition for Writ of Habeas Corpus – Person in State Custody is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: Sept. 23, 2010